RICHARD L. HUGHES

*v.*

CLAY LITTLE, Chairman of the Carter County Beer Committee, et al.

376 S. W. 2d 482

(*Knoxville,* September Term, 1963.)

Opinion filed March 5, 1964.

Alfred W. Taylor, Johnson City of counsel, Epps, Powell, Weller, Taylor & Miller, Johnson City, for appellant.

Jack R. Musick, County Attorney, R. E. Banks, Elizabethton, for appellee, Chairman of Carter County Beer Committee.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This is an appeal from the denial by the Chancellor of a license to the appellant, Richard L. Hughes, to sell

beer by the package. The case has been briefed and argued before this Court. After thoroughly reading the record and examining the authorities, we are in a position to dispose of the questions presented.

▮ The appellant, Hughes, filed an application with the Beer Committee of Carter County to be allowed to sell beer at the Cove Ridge Dock on the Wautauga Lake by the package. The Beer Committee conducted a hearing and after considering the matter thoroughly concluded that it would be against the health, safety and morals of the public generally, and particularly the safety of those persons using the lake, to grant such a permit. Upon the denial by the Committee of this application, Hughes filed his bill in the Chancery Court for certiorari against the Committee, alleging that he had applied for a permit pursuant to sec. 57-205 through sec. 57-223, T.C.A., and that his application had been denied. He alleged, of course, in his petition for certiorari that he was entitled to the permit and that the Committee in denying this application had acted illegally, unlawfully and arbitrarily and violated his State and Federal constitutional rights. The petition for ceritorari was answered and the matter came on for hearing before the Chancellor *de novo* pursuant to the statute, as construed by this Court in *Fentress County Beer Board v. Cravens*, 209 Tenn. 679, 356 S.W.2d 260.

After hearing the matter fully the Chancellor in all things affirmed the Beer Committee. Among other things he held: ''that it would not be in the best interest of the safety and morals and the good public interest of the people involved'' to grant such a permit. According to the Chancellor's opinion a number of the best citizens of the community were heard and they stated it would be

contrary to the public safety and morals to grant such a permit because this was on a dead end road and where a number of children play around it; it is hard to police and is a very narrow road. If a fact question had been raised here it would have been our duty to review this evidence *de novo* with a presumption that the decree of the Chancellor was correct unless the preponderance of the evidence was otherwise.

In the trial before the Chancellor, as above indicated, the appellant was represented by counsel who are not now in the case. After the Chancellor determined the matter against the appellant he employed another law firm and consequently any defects that might be in this record are not now chargeable to present counsel. Counsel for appellant only assigns one error. There were twenty-seven different assignments in a petition to rehear or motion for a new trial filed with the Chancellor. Apparently counsel must have concluded that the evidence did not preponderate against such a finding, as above pointed out, and as will hereinafter appear. As just said, there is only one assignment of error and that is that the Chancellor erred in holding that the Beer Committee had complied with the requirements of the writ of certiorari and statute in the absence of any transcript of the record of the proceedings, including the appellant's application for a permit being certified and returned to the Chancery Court as required by the writ.

■ ■ Of course, it is a well settled proposition that the issuance of service of a writ of certiorari effectually removes the cause from the inferior into the superior court. It is likewise well settled that it is the duty of the inferior court to immediately return all papers in the

cause which is certioraried to the superior court. See *Uhles v. Nolen*, 42 Tenn. 529.

■ The burden though in seeing that this is complied with by the clerk of the lower court, that is, that the complete record is made up and transferred to the superior court, is on the one filing the petition for certiorari. The writer of Tennessee Procedure in Law Cases, Higgins and Crownover, at page 670 of that work, sec. 1688, very properly says:

"It is particularly incumbent upon the justice of the peace to transmit all papers in his possession to the clerk of the circuit court; and he should state on the writ delivered to him the fact that he has done so. But this omission is not fatal. If in fact he has returned the papers to the clerk of the court and they are marked filed, he has really done these things commanded of him. *The attorney of petitioner must be diligent to see that this be done.* There is no specific provision in the statute requiring the justice to file the original papers in his possession at any particular date, but this should be done on the first day of the term to which the writ was made returnable, or at least within the time allowed the defendant to make defense." (Emphasis ours.)

■ What we have just quoted is obviously stated with reference to a certiorari from a Justice of the Peace to the Circuit Court. The same reasoning and reasons apply to a certiorari from a Beer Committee to a superior court as those just stated above. It seems to us without fear of contradiction that the obligation to see that the papers that were had, including the application for a permit and others that were heard before the Beer Com-

mittee, are properly sent up to the superior court is upon the person who files this application for certiorari. When the fact appears that they are not in the record there are various and sundry ways to get these papers up— such as a diminution of record, or have them certioraried up in various and sundry ways—but the obligation to see that all of these things are before the superior court is upon the petitioner.

In this record, which was made before the Chancellor, the cause came on to be heard before him *de novo*. *Fentress Co. Beer Board v. Cravens,* supra. He heard this case in that way. The record is made up of some 200 pages of testimony, including that of the applicant. The questions asked the applicant for this permit indicate clearly that the then counsel for the appellant who was questioning the applicant must have had this application before him, because question after question, that are asked the appellant before the Chancellor, are questions that are on the normal application for a beer permit. All these questions were obviously answered favorably to the appellant. The presumption certainly must appear then that the appellant cannot be harmed by not having his application for a permit in this record. If there was any technical reason or harm done him by not having it filed in this record, then the obligation to see that he was not harmed was on the appellant and his counsel in the proceeding had before the Chancellor.

For more than a hundred years the statute, sec. 27-116, T.C.A., has been the statutory rule in this State. Prior to that time we assume that such an application as this statute provides for certainly was in effect. This statute provides that:

"No judgment, decision, or decree of the inferior court shall be reversed in the appellate courts, unless for errors which affect the merits of the judgment, decision, or decree complained of."

Headnote 1 under this Code Section in effect says the same thing and says that mere technical errors unless they affect the merits of the cause, and cause a substantial right to be violated, the Court must not and should not reverse. As authority for this proposition there are literally hundreds of cases cited, many of them in this footnote, to which we have just referred. Then following this Section of the Code in 1911 the Legislature passed sec. 27-117, T.C.A., which provides in effect that no verdict or judgment shall be set aside for mere technical errors. There are literally dozens upon dozens of cases cited supporting this proposition.

■ Taking into consideration these two Code Sections along with the many judicial determinations that have been made under various factual situations in all types of cases since, it is indeed hard for us to conceive how a case of the kind here should be reversed because in sending up the transcript of the Beer Committee to the Chancery Court under a certiorari the application of the appellant to sell beer is not included in that record. Of course, the first reason that we assigned was that the obligation was on counsel then representing the appellant to see that it was done, but aside from that fact this record clearly shows that the evidence heard before the Chancellor in this *de novo* proceeding (by a great preponderance of the evidence) showed that a license should not be granted for the site wherein the appellant wished to sell beer. In support of the Beer Committee and

against the granting of this license the Sheriff, the Superintendent of Schools, and a number of leading citizens of that community were offered against granting such a permit; while the only evidence offered in favor of granting such a permit was the testimony of the appellant, applicant for the license, and a non-resident of the State. Under such a factual situation as this record presents clearly no harmful error has been committed even if it were conceded that this application and record are not fully complete to comply with the petition for certiorari.

For reasons stated herein the decree of the Chancellor must be affirmed. Frankly, we think present counsel for the appellant has made the strongest possible application that could be made to try to reopen this case, but as we see this record this cannot be done under any consideration.